UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT EDDINGFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:18 CV 1590 ACL |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Scott Eddingfield brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Eddingfield's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

---

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## I. Procedural History

Eddingfield filed his application for benefits on May 15, 2015, claiming that he became unable to work on February 1, 2014. (Tr. 180-81.) In his Disability Report, Eddingfield alleged disability due to Parkinson's disease,[2] dyskinesia, dystonia, depression, a herniated disc at L4-L5, rheumatoid arthritis, a knee impairment, migraines, insomnia, and a melanoma. (Tr. 207.) Eddingfield was 46 years of age at his alleged onset of disability. (Tr. 24.) His application was denied initially. (Tr. 75-81.) Eddingfield's claim was denied by an ALJ on January 29, 2018. (Tr. 15-26.) On July 24, 2018, the Appeals Council denied Eddingfield's claim for review. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Eddingfield raises the following claims: (1) "There is no explanation of how the evidence supports the RFC," (2) "The ALJ failed to conduct a proper credibility determination when discounting Plaintiff's pain/subjective complaints;" and (3) "The ALJ improperly afforded Plaintiff's treating physician's opinion 'little weight.'" (Doc. 19 at pp. 3, 5, 6.)

## II. The ALJ's Determination

The ALJ first found that Eddingfield last met the insured status requirements of the Act on March 31, 2015. (Tr. 17.) She next found that Eddingfield did not engage in substantial

---

[2] Parkinson's disease is a neurologic syndrome usually resulting from deficiency of the neurotransmitter dopamine characterized by rhythmic muscular tremors, rigidity of movement, droopy posture, masklike facies, and changes in speech and gait. *Stedman's Medical Dictionary,* 1426 (28th Ed. 2006).

gainful activity during the period from his alleged onset date of February 1, 2014, through his date last insured of March 31, 2015. *Id.* The ALJ concluded that, through his date last insured, Eddingfield had the following severe impairments: right and left knee osteoarthritis, degenerative disc disease of the cervical and lumbar spine, obesity, and Parkinson's disease. (Tr. 18.) The ALJ found that Eddingfield did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 19.)

  As to Eddingfield's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: the claimant can occasionally lift, carry, push, and pull 10 pounds; frequently lift, carry, push, and pull less than 10 pounds; sit for six hours; stand for two hours; and walk for two hours in an 8-hour work day. The claimant can handle items frequently with the left and right hands; and finger frequently with the left and right hands. The claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; and never crawl. The claimant can never work at unprotected heights or near moving mechanical parts. The claimant is limited to simple, routine, and repetitive tasks. The claimant is limited to simple work-related decisions.

*Id.*

  The ALJ found that Eddingfield was unable to perform any past relevant work through the date last insured, but was capable of performing other jobs existing in significant numbers in the national economy, such as production assembler, general office clerk, and accounting clerk. (Tr. 24-25.) The ALJ therefore concluded that Eddingfield was not under a disability, as defined in the Social Security Act, at any time from February 1, 2014, the alleged onset date, through March 31, 2015, the date last insured. (Tr. 25.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on May 15, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2015, the last date insured.

(Tr. 26.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and

>     non-exertional activities and impairments.
>
> 5.  Any corroboration by third parties of the plaintiff's
>     impairments.
>
> 6.  The testimony of vocational experts when required which is
>     based upon a proper hypothetical question which sets forth the
>     claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v.*

*Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is

other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must

determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

### IV. Discussion

As an initial matter, the Court notes that Eddingfield's insured status is relevant in this case. Eddingfield alleged an onset of disability date of February 1, 2014. His insured status expired on March 31, 2015. To be entitled to benefits under Title II, Eddingfield must demonstrate he was disabled prior to March 31, 2015. *See* 20 C.F.R. § 404.130. Thus, the period under consideration in this case is from February 1, 2014, through March 31, 2015.

Eddingfield argues that the ALJ erred in failing to explain how the evidence supports her RFC determination, discrediting the opinion of his treating physician, and failing to conduct a proper credibility analysis. The undersigned will discuss Eddingfield's claims in turn, beginning with the ALJ's analysis of the consistency of Eddingfield's subjective complaints or credibility.[3]

#### 1. Credibility Analysis

In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating

---

[3]Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the "regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

Eddingfield testified that, during the relevant period, he experienced difficulties with his bilateral hands and arms, including shaking, decreased strength, and immobility caused by his Parkinson's disease. (Tr. 20, 246.) He also reported difficulties with his bilateral feet, including peripheral nerve damage, pain when walking and moving his feet, and toe curling that prevented him from walking. (Tr. 20, 246-47.) Eddingfield testified that he was unable to work during this time due to cramping in his legs, his legs not moving when he wanted them to move, and his right hand shaking and not functioning well enough to allow him to write or use a computer. (Tr. 21, 246-47, 53-56.) Additionally, Eddingfield testified that he experienced knee pain, lower back pain, difficulty paying attention, and nausea caused by his medications. (Tr. 20-21, 246-47, 53-56.) With regard to his daily activities, Eddingfield testified that he was able to prepare simple meals such as sandwiches, dress himself slowly, bathe himself most of the time, was unable to brush his teeth, had difficulty climbing stairs, could drive short distances, went to the grocery store once a week for a "few minutes," and attended church occasionally. (Tr. 20-21, 42, 48-51.) He testified that he missed work three to four days a week due to

problems driving with his right foot, as well as illness he experienced from his medication. (Tr. 21, 52.) Eddingfield stated that he was not rehired when his employer reorganized because he was not able to function properly and was not productive. (Tr. 54.)

The ALJ stated that Eddingfield's allegations are not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 21.) She further stated that Eddingfield's allegations are not "wholly supported by the medical evidence as of the date last insured." (Tr. 21.) The ALJ then summarized the medical evidence of record. (Tr. 21-22.)

The ALJ first discussed the evidence from the relevant period. She noted that Eddingfield sought orthopedic treatment from Scott Kaar, M.D., in April 2014, due to a knee injury. (Tr. 21, 306-08.) Eddingfield reported that he had twisted his left knee five days prior and had experienced medial pain since. *Id.* Upon examination, Eddingfield had a limping gait and his left knee was tender, but full range of motion. *Id.* Imaging revealed mild bilateral knee joint degenerative changes, more prominent on the right side. *Id.* Dr. Kaar diagnosed Eddingfield with early left knee arthritis and likely right knee arthritis and recommended icing the knee three to five times daily, physical therapy exercise, and anti-inflammatory medications. *Id.*

Eddingfield saw Paul Kotzbauer, M.D., Ph.D., at the Movement Disorders Center of Washington University School of Medicine on April 23, 2014, for follow-up of Parkinson's disease that began around the age of 40. (Tr. 21, 319.) Eddingfield complained of difficulty with his right arm and leg, as well as nausea associated with his medication. *Id.* He reported his symptoms partially improved with medication, but the medications wore off after about four hours, causing slower and more erratic movements of his arms and a slower gait. *Id.*

Eddingfield also complained of numbness and tingling in his toes and his bilateral fingertips. *Id.* Additionally, Eddingfield reported difficulty with attention and focus. *Id.* He had lost his job two months prior when the company for which he worked re-organized and did not rehire him. *Id.* Upon examination, Eddingfield had no tremor at rest in the bilateral upper and lower extremities; and his rigidity was rated as 1 in the neck (on a 0 to 4 scale with 0 being absent), 2 in the right upper extremity, 1 in the left upper extremity, and 0 in the bilateral lower extremities. (Tr. 319-20.) His finger taps were rated as 2 in the right upper extremity (on a 0 to 4 scale with 0 being normal) and 1 in the left upper extremity; his hand movements were rated as 2 in the right upper extremity and 1 in the left upper extremity; his rapid alternating hand movements were rated as 1.5 in the bilateral upper extremities; and his leg agility was 2 in the right lower extremity and 1 in the left lower extremity. (Tr. 320.) Dr. Kotzbauer found Eddingfield's speech evidenced a slight loss of expression, diction, or volume; his facial expression was normal; he was slow to arise from a chair; his posture and gait were normal; and he exhibited a mild degree of slowness and poverty of movement. *Id.* Eddingfield scored 29 of 30 on his mini mental status examination, correctly providing all information other than the date. *Id.* Dr. Kotzbauer diagnosed Eddingfield with stage 2 idiopathic Parkinson's disease. *Id.* He stated that Eddingfield has had difficulty with decreased dexterity and stiffness in his right arm, particularly his right hand; and mild symptoms in his right leg. *Id.* Dr. Kotzbauer adjusted Eddingfield's medications and noted that his complaints of slow processing could be related to his medications wearing off. (Tr. 321.)

The ALJ next noted that Eddingfield sought treatment at Washington University Orthopedics for low back pain and worsening tingling in his feet in June 2014. (Tr. 22, 506.) Upon examination, Eddingfield walked with a slightly wide-based gait and short stride, exhibited

greatly reduced arm movement consistent with his history of Parkinson's, and exhibited pain with flexion.  *Id.*  He was diagnosed with bilateral leg and lower extremity pain with paresthesias, possible small fiber neuropathy, and axial low back pain.  *Id.*  In November 2014, Eddingfield underwent a lumbar epidural steroid injection.  (Tr. 504.)

       The ALJ stated that in April 2015, just after Eddingfield's date last insured, treatment notes indicate his Parkinson's had progressed.  (Tr. 22.)  On April 7, 2015, he presented at Washington University Orthopedics with complaints of right neck and trapezial pain and diffuse right hand paresthesias.  (Tr. 22, 502.)  The examining nurse practitioner noted that Eddingfield's Parkinson's had progressed.  (Tr. 502.)  Eddingfield underwent x-rays of the cervical spine, which revealed disc degeneration at C6-7 and C7-T1 with central canal stenosis.  (Tr. 501-02.)  He received trigger point injections to the right trapezius and cervical paraspinal region and was prescribed steroids.  (Tr. 502.)  He was also referred to physical therapy for cervical stabilization.  *Id.*

       On April 29, 2015, Eddingfield presented to Dr. Kotzbauer for follow-up.  (Tr. 547.)  Eddingfield complained of difficulty with motor fluctuations and dyskinesia in his right arm and leg.  (Tr. 547.)  He reported that his medications wear off after about three hours, causing greater difficulty with his right hand and with walking.  *Id.*  Eddinfield also complained of difficulty with his right great toe extending up and pulling backwards; intermittent pain, tightness, and pulling in his neck and trapezius area; numbness and tingling in his toes; and left knee pain that limits his walking and activity.  *Id.*  Upon examination, Eddingfield had tremor of the right hand rated as 1 on a scale of 0 to 4; and his rigidity was rated as 1 in the neck, 2 in the right upper extremity, and 2 in the bilateral lower extremities.  (Tr. 548.)  Dr. Kotzbauer rated Eddingfield's finger taps 3 in the right upper extremity and 1 in the left upper extremity;

his hand movements 2 in the right upper extremity and 1 in the left upper extremity; rapid alternating hand movements 2.5 in the right upper extremity and 1 in the left upper extremity; and leg agility 2.5 in the right lower extremity and 2 in the left lower extremity. *Id.* Dr. Kotzbauer found Eddingfield had a slight loss of expression, diction, or volume in his speech; moderate abnormalities in his facial expression; a posture that was not quite erect and slightly stooped; a slow gait with short steps; a retropulsion in his posture; and moderate slowness of body movement. *Id.* Dr. Kotzbauer diagnosed Eddingfield with stage 2.5 Parkinson's disease and dystonia due to Parkinson's disease. *Id.* He stated that Eddingfield "has developed significant difficulty with motor fluctuations and dyskinesia," and experienced short duration of benefit from medication. *Id.* Dr. Kotzbauer noted that Eddingfield's dystonia is causing extension and curling of his right great toe and cervical dystonia. *Id.* He continued Eddingfield's medications. *Id.*

Eddingfield underwent imaging of the lumbar spine on January 28, 2016, which revealed progressive mild to moderate lumbar degenerative disc disease with multisegment degenerative retrolistheses. (Tr. 22, 465.) The ALJ noted that, although this imaging did not occur until after the date last insured, it is reasonable to assume this impairment occurred prior to the imaging results as Eddingfield had complained of lower back pain during the relevant period. (Tr. 22.)

After the summary of the medical evidence described above, the ALJ proceeded to evaluate the medical opinion evidence. The ALJ did not discuss any of the other *Polaski* factors, such as Eddingfield's daily activities or side effects from medication, nor does she point to any inconsistencies in the record.

Although subjective complaints can be discounted if there are inconsistencies in the evidence as a whole, here the ALJ failed to specifically detail the inconsistencies in Eddingfield's testimony and the record that caused the ALJ to reject Eddingfield's complaints. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The only relevant factor discussed by the ALJ was the objective medical evidence. The ALJ, however, failed to explain how this evidence was inconsistent with Eddingfield's subjective complaints. The evidence cited by the ALJ reveals Eddingfield sought treatment for knee pain, at which time he was found to have a limping gait and imaging revealed degenerative changes consistent with arthritis. (Tr. 306-08.) Eddingfield also received treatment for his Parkinson's disease from Dr. Kotzbauer during the relevant period and complained of difficulty with his right arm and leg, numbness in his fingers and toes, difficulty with attention and focus, and nausea from his medication. (Tr. 319.) Dr. Kotzbauer noted some abnormalities on examination and remarked that Eddingfield had difficulty with decreased dexterity and stiffness in his right arm and leg. (Tr. 320.) Finally, Eddingfield sought orthopedic treatment for his complaints of low back pain and tingling in his feet, at which time he was noted to have an abnormal gait, greatly reduced arm movement consistent with his Parkinson's disease, and pain. (Tr. 506.) Contrary to the ALJ's finding, this evidence appears to provide support for Eddingfield's allegations.

In sum, the ALJ erred by failing to specifically and accurately detail the inconsistencies in Eddingfield's testimony and the record that caused the ALJ to reject Eddingfield's subjective complaints. As a result, there is not substantial evidence and good reasons to support the ALJ's credibility determinations and remand is required.

### 2. Medical Opinion Evidence and RFC

Eddingfield also argues that the ALJ erred in according "little weight" to the opinion of

treating physician Paul Kotzbauer, M.D., and in providing no support for her RFC determination. The undersigned agrees.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Dr. Kotzbauer completed a Parkinson's Disease Medical Assessment Form on April 8, 2016. (Tr. 407-10.) He indicated he had been treating Eddingfield since 2010, and saw him

every three to six months.  (Tr. 407.)  Dr. Kotzbauer noted Eddingfield exhibited the following signs or symptoms of Parkinson's disease: tremor, rigidity, bradykinesia, impaired gait, impaired attention and concentration, soft or poorly modulated voice, and reduced intellectual function. *Id.*  Eddingfield's symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks; and he would be unable to perform routine and repetitive tasks at a consistent pace, detailed or complicated tasks, tasks with strict deadlines, fast paced tasks, or be exposed to work hazards.  (Tr. 407-08.)  Dr. Kotzbauer expressed the opinion that Eddingfield could walk two city blocks without rest; sit for two hours at a time and a total of six hours; stand for thirty minutes at a time and a total of two hours; would require one hour breaks two to three times in an average workday due to muscle weakness and pain or paresthesia; and could occasionally lift less than ten pounds.  (Tr. 409.)  Dr. Kotzbauer found that Eddingfield's use of his hands, fingers, and arms for grasping, fine manipulation and reaching would be slow and difficult, due to bradykinesia, rigidity, and the side effects of medication.  *Id.*  Finally, Dr. Kotzbauer indicated that Eddingfield would likely be absent from work three days a month due to his impairments.  (Tr. 410.)  Dr. Kotzbauer completed another questionnaire on April 4, 2017, in which he found even greater limitations.  (Tr. 413-15.)

       The ALJ assigned "little weight" to Dr. Kotzbauer's opinions in determining Eddingfield's RFC.  (Tr. 23.)  She explained that the opinions were provided a year and two years, respectively, after Eddingfield's date last insured.  *Id.*

       The ALJ then concluded that Eddingfield retained the functional capacity to perform sedentary work with the following additional limitations:

> can occasionally lift, carry, push, and pull 10 pounds; frequently lift, carry, push, and pull less than 10 pounds; sit for six hours; stand for two hours; and walk for two hours in an 8-hour work day. The claimant can handle items frequently with the left and right

> hands; and finger frequently with the left and right hands. The claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; and never crawl. The claimant can never work at unprotected heights or near moving mechanical parts. The claimant is limited to simple, routine, and repetitive tasks. The claimant is limited to simple work-related decisions.

(Tr. 19.)

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of his limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The ALJ explained that her RFC assessment was supported by "the objective medical evidence, including the imaging results and the physical examinations of the claimant." (Tr. 24.) She stated that Eddingfield's combination of impairments and symptoms "including his limitations with his hands and arms, difficulty with balance, and weakness were considered in limiting the claimant to the sedentary exertional level with additional manipulative, postural, and environmental limitations." *Id.*

The undersigned finds that the RFC determined by the ALJ lacks the support of substantial evidence. First, as previously discussed, the ALJ failed to properly evaluate Eddingfield's subjective complaints of pain and limitations. The ALJ then discredited the opinions of treating physician Dr. Kotzbauer solely because it was provided after Eddingfield's date last insured. The ALJ did not consider whether Dr. Kotzbauer's opinions were adequately explained or whether they were consistent with his own treatment notes or the other medical evidence of record. Dr. Kotzbauer had been treating Eddingfield for his Parkinson's disease on a regular basis since 2010. The ALJ could have requested clarification from Dr. Kotzbauer regarding the earliest date at which the assessed limitations applied. Indeed, many of the symptoms cited by Dr. Kotzbauer in support of his opinions were documented in the medical record prior to the date last insured. Significantly, no other physician, examining or otherwise, provided an opinion regarding Eddingfield's work-related limitations.

Although the ALJ was not required to choose a particular medical opinion on which to rely in determining Eddingfield's RFC, she cited no medical evidence whatsoever in support of her determination. Rather, she simply made the conclusory statement that her assessment was supported by the medical evidence and that she had considered all of Eddingfield's impairments and symptoms. The medical evidence cited by the ALJ demonstrated Eddingfield experienced significant symptoms from his Parkinson's disease prior to the expiration of his insured status. Dr. Kotzbauer's opinion is much more restrictive than the RFC formulated by the ALJ. The ALJ fails to provide support for her determination that Eddingfield retained the capacity to perform a range of sedentary work, especially with regard to his ability to handle and finger items frequently with both hands.

**Conclusion**

In sum, the ALJ erred in assessing Eddingfield's subjective complaints, evaluating the opinion of treating physician Dr. Kotzbauer, and in determining Eddingfield's RFC.

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ shall properly consider Eddingfield's subjective complaints, evaluate Dr. Kotzbauer's opinion, obtain additional evidence if necessary, and formulate an RFC supported by substantial evidence.

/s/ Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of September, 2019.